UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TERESA CARLISLE,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Case No.  22-cv-06856-RFL<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, REMANDING THE REMAINING CLAIM TO STATE COURT, AND DENYING AS MOOT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 71, 78 |

Teresa Carlisle ("Plaintiff") filed this action, on behalf of herself and similarly situated individuals, against Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. (collectively, "Defendants"), alleging that (1) Defendants' Paid Personal Time ("PPT") policy violates California Labor Code § 227.3, (2) Defendants' failure to pay sign-on bonuses as advertised in job postings amounts to breach of contract, and (3) Defendants' unfair practices violates the California Business and Professions Code § 17200, *et seq*.  Plaintiff moved for class certification.  Defendants moved for summary judgment.  Defendants' motion for summary judgment is **GRANTED** as to the first and third causes of action.  The Court **REMANDS** the second cause of action to the Superior Court of California for the County of Alameda.  Plaintiff's motion for class certification is **DENIED** as moot.  This ruling assumes that the reader is familiar with the facts, the applicable legal standards, and the arguments made by both parties.

1

***Defendants' PPT policy does not violate § 227.3.***   Under § 227.3, "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off [their] vested vacation time, all vested vacation shall be paid to [them] as wages at [their] final rate in accordance with such contract of employment or employer policy."  The protections under this statutory provision boil down to a simple rule: once vacation time "vests," meaning the time has been earned, it cannot be withheld upon termination of employment.  *Suastez v. Plastic Dress-Up Co.*, 647 P.2d 122, 125 (Cal. 1982) ("It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed.").  Nor can employers artfully circumvent this rule by imposing a length of service requirement as a "condition subsequent" for vesting.  "If vacation pay 'vests' as it is earned, the company's requirement of employment on an anniversary date cannot prevent the right to pay from vesting.  At most, it is a condition subsequent which attempts to effect a forfeiture of vacation pay already vested."  *Id.* at 126.

But within those constraints, employers retain flexibility to structure their vacation policies as they choose, so long as the terms are clear.  *See Owen v. Macy's, Inc.*, 96 Cal. Rptr. 3d 70, 76 (App. Ct. 2009) (finding policy legal where vesting rules were "clear"); *see also Minnick v. Automotive Creations, Inc.*, 220 Cal. Rptr. 3d 752, 757 (App. Ct. 2017) (finding same).  For example, paid leave policies that impose waiting periods before vesting begins are perfectly acceptable.  *Owen*, 96 Cal. Rptr. 3d. at 76 (sanctioning policy where no vacation time is accrued during the first six months of employment).  Similarly, policies that set maximum accrual amounts are consistent with the requirements of § 227.3 as well.  *See id.* at 76-77 (explaining that "no additional accrual" policies are legal because they do not "attempt an illegal forfeiture of vested vacation").

The PPT policy covering Plaintiff's position is structured like this: In January or on the date of hire, the employee is awarded 10 hours. After that, based on the biweekly accrual rate, the employee accrues 3.69 hours per 10 pay periods and 1.1 hours per the 11th pay period. The PPT policy contemplates a 48 hours per year cap. The policy does not change from year to year. (Dkt. No. 78 at 13.) Plaintiff was awarded 10 hours when she started her full-time position on February 21, 2021, and accrued another 3.69 hours per pay period, for a total of 23.04 hours before her employment terminated on April 5, 2021. Plaintiff argues that upon termination from her job, she was entitled to an additional pro rata share of the 10 hours she would have been granted the following January 2022. She contends that, under the PPT policy, the 10-hour award vests over time based on work performed. There are no disputed issues of fact, and Plaintiff admits that this is a pure legal issue. Resolution of the question turns on deciding the time at which the 10-hour entitlement vests.

Courts look to the plain meaning of the policy when determining how paid time vests. *Minnick*, 220 Cal. Rptr. 3d at 759. Here, Plaintiff argues that the 10-hour entitlement accrues based on the employee's labor performed throughout the prior year. In Plaintiff's view, the 10 hours vest over the course of the year. Defendants, on the other hand, argue that the 10 hours function as a grant, since they are awarded in a single installment at the beginning of each year (or on date of hire for year one). Under this view, employees do not accrue these hours based on work performed. Rather, the 10 hours automatically vest on the date of hire and, thereafter, at the beginning of each year.

Looking to the plain meaning of the policy, it is clear the 10 hours vest as a single event, irrespective of work performed. The policy provides:

> Regular full-time, reduced-time, and part-time employees who are
> scheduled to work 20 or more hours per week will be granted up to
> 10 hours of personal time in January or on their date of hire and are

eligible to use their paid personal time once the accrual has been recorded. Over ten pay periods, regular full-time employees accrue 3.69 hours per pay period and then, in the eleventh pay period, they accrue 1.1 hours, up to a total maximum of 48 hours (6 days) of paid personal time accrual per calendar year.

The policy illustrates the concept with the following chart:

| Scheduled Hours | In January or on first paycheck after Date of Hire | Bi-weekly accrual rate | Maximum Accrual Cap |
|---|---|---|---|
| Full-Time 40+ Hours/Week | 10.0 hrs | +3.69/10 pay periods; 1.1 hrs/11th pay period (48 hrs/yr) | 48 hrs/yr |

Under the policy, employees are immediately credited 10 hours of PPT on their date of hire, prior to performing any work in consideration of these hours. Thus, the 10 hours automatically vest as a set amount, without contemplation of how long the employee has been with the company or how long the employee plans to stay. Read naturally, these hours are not accrued over time, but vest on the day they are granted.

The 10 hours cannot be read to operate as an advance for the labor the employee will perform that year. The policy expressly authorizes employees to use the time from the moment that it is received. Nowhere in the policy does it state that if the employee leaves prior to the end of that employment year, they would be required to return a pro rata share of the 10-hour award. But even if these hours are treated as an advance, the 10 hours granted on date of hire or at the beginning of that year would only function as an advance on what the employee would accrue for their labor in that year, not for the following year. "In short, '[n]o case has held that what will happen or vest in the future has already somehow become vested or accrued in the present. The rule against forfeiture of *accrued* vacation rights, by its own terms, cannot apply to vacation

4

pay which is to be earned in the future, i.e., which has not yet accrued.'"  *Owen*, 96 Cal. Rptr. 3d. at 77 (quoting *Kistler v. Redwoods Comm. College Dist.*, 19 Cal. Rptr. 2d 417, 421 (App. Ct. 1993)).  Either way, Plaintiff would not be entitled to a pro rata share of the following year's 10 hours, which were to vest at a future date.

Finally, with respect to the first year of employment, it is telling that the policy does not differentiate between employees who begin their jobs in January and those who begin their jobs later into the employment year.  If the 10-hour award vested as it was earned, one would assume that employees hired later into the year would only receive a pro rata share of the 10 hours based on the percentage of the year that they worked for the company.  That the policy makes no such distinction further confirms that it is a grant made at the outset.

Based on the foregoing analysis, Defendants' failure to pay Plaintiff a pro rata share does not constitute an unlawful forfeiture under the meaning of § 227.3.  Plaintiff was not deprived of any vacation time to which she was entitled.  Accordingly, summary judgment on this claim is granted in favor of Defendants.

**Breach of contract claim for failure to pay sign-on bonus**.

Plaintiff does not dispute that she cannot meet the burden of proof on her breach of contract claim.  The sole evidence in the record is that the advertisement Plaintiff clicked did not promise a sign-on bonus.  Based on this factual revelation, Plaintiff does not have standing to bring this claim in federal court.  Accordingly, because the Court lacks jurisdiction over this claim, Plaintiff's claim is remanded to state court.

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must have suffered an injury-in-fact.  That injury must be concrete, particularized, and actual or imminent.  Second, a

causal connection between the injury and conduct complained of must exist.  *Id.* ("[T]he injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).  Third, it must be likely that a favorable decision would redress the injury.

Plaintiff's breach of contract claim is premised on the theory that Defendants advertise sign-on bonuses in job postings but do not actually pay those bonuses once applicants are hired. The injury-in-fact is the economic loss of the sign-on bonus that was promised in the job posting. But in Plaintiff's case, the undisputed record shows that she did not personally see a job posting that advertised a sign-on bonus.  Based on these facts, Plaintiff was not injured by any conduct on the part of Defendants.  *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotations and citations omitted)).  As a result, Plaintiff lacks standing to bring this claim in federal court.

That Plaintiff has standing to assert her first cause of action has no bearing on her ability to assert her second cause of action.  Federal court jurisdiction over one claim does not confer jurisdiction over another.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006) ("What we have never done is . . . to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing. . . . [O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").

To cure the jurisdictional defect, Plaintiff requests leave to find a suitable class

representative.  This request is denied.  Standing is a claim-specific analysis, and where, as here, the sole named Plaintiff "never had standing" to bring the breach of contract claim, the defect cannot be remediated by finding an individual who does.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (relying on the reasoning from *Foster v. Ctr. Township of LaPort Cnty.*, 798 F.2d 327 (7th Cir. 1986)); *see also Almeida v. Google, Inc.*, 2009 WL 3809808, at *2 (N.D. Cal. Nov. 13, 2009) ("*Lierboe* stands for the proposition that where the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal.").

But even if substitution were permissible, Plaintiff does not carry her burden to show good cause exists for amending the pleadings so far beyond the deadline to amend pleadings, which passed on June 26, 2023.  (Dkt. No. 19);  Fed. R. Civ. Proc. 16.  Although Plaintiff's argument focuses on Defendants' delay in coming forth with the conclusive evidence, Plaintiff is the one who brought suit claiming that she had seen a sign-on bonus advertisement, which she undisputedly did not see.  Plaintiff offers no explanation for why she brought suit premised on a false allegation.  Moreover, Plaintiff also provides no explanation for why she did not move for leave to amend promptly when Defendants showed her which sign-on bonus ad she clicked on in May 2024.  (Dkt. No. 82 at 12.)  Instead, Plaintiff proceeded through briefing on class certification and summary judgment on what she knew was an invalid premise, thereby prejudicing Defendants.

In sum, the Court lacks jurisdiction over Plaintiff's breach of contract claim.  Although this claim appears futile because Plaintiff cannot show she saw the sign-on bonus advertisement at issue, it must be remanded to state court.  *Polo v. Innoventions Int'l LLC*, 833 F.3d 1193, 1199 (9th Cir. 2016).  The question is ultimately one for the state court to decide.

***Unfair Competition Law***.  California's Unfair Competition Law contemplates recovery for unlawful, deceptive, or unfair business practices where no adequate remedy at law is available.  In her Complaint, Plaintiff alleged that Defendants have engaged in "unfair business practices" through their "(1) failure to pay all vested vacation wages earned" and "(2) failure to pay all sign-on bonus wages promised."  (Dkt. No. 1-1 ("Compl.") at 15 ¶ 47.)  Plaintiff has constitutional standing to assert her UCL claim, as it not only alleges injury based on Defendants' failure to pay sign-on bonuses, but also alleges injury resulting from Defendants' failure to pay vested vacation time upon termination.  Therefore, there is jurisdiction to address this claim.

However, the claim fails as a matter of law on the undisputed facts.  Statutory standing under the UCL "is limited to any person who has suffered injury in fact and has lost money or property as a result of unfair competition."  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011) (internal quotations and citations omitted).  To state a claim, Plaintiff must sufficiently allege that she has lost money or property as a result of Defendants' conduct.  *See Souter v. Edgewell Personal Care Co.*, 542 F. Supp. 3d 1083, 1090 (S.D. Cal. 2021) ("Statutory standing under the UCL . . . is assessed under the 12(b)(6) standard"); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of *statutory* standing requires dismissal for failure to state a claim").  Based on the analysis above, it is clear that Plaintiff can allege neither.  As it relates to her PPT theory, Plaintiff was not deprived of any vacation time to which she was entitled.  And as it relates to her sign-on bonus theory, Plaintiff was never promised the bonus at issue.  Summary judgment on this claim is granted.[1]

---

[1] Plaintiff's brief states that she "withdraws" her UCL claim "without prejudice" as to the sign-on bonus theory (Dkt. No. 82 at 25), but she was required to seek leave to voluntarily dismiss a claim once a motion for summary judgment has been filed.  Fed. R. Civ. Proc. 41(a)(2).  In any event, leave to

***Plaintiff's Evidentiary Objections.*** Plaintiff filed separate evidentiary objections (Dkt.

No. 82-19) in violation of Local Rule 7-3(a), which require those objections to be included

within the 25-page limit set for the opposition brief. Those objections are stricken. In any event,

Plaintiff's objections are moot. The parties agree on the facts as to the PPT policy, and Plaintiff

cites the same PPT policy in her supporting evidence. And, as to the sign-on bonus, Plaintiff

does not contest that she cannot meet her burden of proof as to those allegations.

*            *            *

Based on the foregoing analysis, Defendants' motion for summary judgment is

**GRANTED** as to the first and third causes of action. The Court **REMANDS** the second cause

of action to the Superior Court of California for the County of Alameda. Plaintiff's motion for

class certification is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: September 30, 2024

RITA F. LIN
United States District Judge

---

withdraw the claim would have been denied due to the prejudice to Defendants. This request comes
almost two years into the litigation after substantial discovery and briefing of class certification and
summary judgment. At this late stage, voluntary dismissal without prejudice would unfairly deny
Defendants finality and leave them open to having to defend this same action again. *See, e.g.*, *Thompson
v. Janssen Pharms. Inc.*, 756 F. App'x 740 (9th Cir. 2019); *Robinson v. Farmbrough*, 2023 WL 5109764
(E.D. Cal. Aug. 9, 2023).